IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NOAH CARTER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PENNSYLVANIA DEPARTMENT OF | : | No. 08-0279 |
| CORRECTIONS, PENNSYLVANIA | : | |
| DEPARTMENT OF GENERAL SERVICES, | : | |
| PRISON HEALTH SERVICES, CORRECTIONAL | : | |
| PHYSICIANS SERVICES, GOV. EDWARD | : | |
| RENDELL, JULIE KNAUER, DR. RALPH | : | |
| SMITH, DR. DENNIS IACCARINO, | : | |
| DR. FELIPE ARIAS and JOHN DOES | : | |

O'NEILL, J.                                             December    17    , 2008

## MEMORANDUM

On January 22, 2008, plaintiff Noah Carter filed a pro se complaint against the

Pennsylvania Department of Corrections (DOC), Pennsylvania Department of General Services

(DGS), Prison Health Services (PHS), Correctional Physicians Services (CPS), Governor

Edward Rendell, Julie Knauer, Dr. Ralph Smith, Dr. Dennis Iaccarino, Dr. Felipe Arias and John

Does alleging that adequate medical treatment for his medical needs was denied and delayed.

All defendants except Governor Rendell were sued in their official and individual capacities.[1]  At

the same time, plaintiff filed a motion for a temporary restraining order and preliminary

injunction, appointment of counsel, appointment of a  medical expert and initial discovery

request dated January 22, 2008.  On January 24, I ordered the Clerk of Court to attempt to

appoint counsel for plaintiff and deferred all decisions on plaintiff's motions pending that

appointment.  On June 12, 2008, I denied plaintiff's motion to perfect service of complaint upon

CPS and Julie Knauer with leave to renew upon appointment of counsel.  On October 31, 2008,

---

[1]  Governor Rendell was sued in his individual capacity only.

finding that at least two attorneys had declined to accept an appointment to represent the plaintiff, I vacated the Order with respect to appointment of counsel. Plaintiff chose to proceed pro se until such time as he could find counsel.

Plaintiff's claim under 42 U.S.C. § 1983 alleges that defendants violated his Eighth Amendment rights by delaying and denying adequate medical treatment of his "serious medical condition and needs." I have before me a motion to dismiss filed by the DOC, DGS, Rendell and Knauer and plaintiff's response thereto and a motion to dismiss filed by PHS, Arias, Iaccarino and Smith and plaintiff's response thereto. It appears from the record that CPS was not served.

BACKGROUND

Plaintiff is a prisoner currently housed in the State Correctional Institution - Graterford (SCI Graterford) while serving a sentence imposed by the Montgomery County Court of Common Pleas. Plaintiff has a history of severe lower back, spine and hip injuries. Between 1999 and 2000,[2] plaintiff was sent from SCI Graterford to Temple University Hospital for treatment on a tumor on his spine. Dr. Ayeesha Kamal, a Temple neurologist, prescribed a three-phase pre-surgery treatment plan to remove the tumor and to prevent, if possible, any serious damage to plaintiff's spine and began the phase one treatment of steroids. However, in 2000, defendants refused to pay Temple for the treatment so phase one treatment ended and plaintiff was not treated with the radiation and surgery as prescribed in phases two and three.

In 2001, despite medical orders from Smith and Iaccarino for a CT scan and an order from the Temple neurologist for an MRI, plaintiff alleges that defendants Julie Knauer, the now-

_____

[2] The exact date of his visit to Temple Hospital is not known.

2

retired corrections health care administrator, and Smith determined that for financial reasons the CT scans and MRI would not be conducted and instead ordered an x-ray and ultrasound.

At some point prior to February 5, 2007, plaintiff was transferred from SCI Graterford to SCI Fayette, located in the Western District of Pennsylvania. On February 6, 2007, he underwent surgery at the University of Pittsburgh Medical Center (UPMC) to remove the tumor. However, only part of the tumor could be removed because it was discovered that the tumor was now embedded in his spine. According to surgeon Dr. Walch of UPMC, had he removed the entire tumor plaintiff would have been paralyzed for the remainder of his life. After the surgery, Dr. Walch prescribed a course of treatment to include three weeks of in-house therapy at UPMC, radiation which was to begin in six weeks and follow-up surgery in six months to remove the remainder of the tumor from plaintiff's spine. On February 9, 2007, plaintiff began phase one therapy at UPMC, but claims that on February 11, 2007, Robert Turtanik, the SCI Fayette's Corrections Healthcare Administrator, informed him that treatment would be ended. Plaintiff alleges that defendants Rendell, DGS, DOC, PHS and CPS removed him from UPMC for financial reasons at that time and returned him to the SCI Fayette infirmary for therapy at the prison. Plaintiff alleges that he has not received any of the prescribed follow-up care at SCI Fayette or at SCI Graterford to which he was later transferred.

Plaintiff claims that an April 2007 angiogram of his spinal cord confirmed that the tumor is embedded in his spine and an MRI revealed the extent of the damage. During a consultation at UPMC, plaintiff alleges that Dr. Walch informed him that treatment could proceed no further because the medical risk was too high and PHS had limited the coverage to treat plaintiff. Plaintiff further alleges that he remains in excessive pain and has not received any medical treatment since his surgery in February 2007.

3

As a prisoner in defendant's care, plaintiff alleges that he has no other avenue available to seek needed medical treatment.  Plaintiff also alleges that defendants' delay and denial of medical treatment resulted in his medical condition deteriorating to the point that the remainder of the tumor is now inoperable which plaintiff alleges will result in his being confined to a wheel chair for the rest of his life.

STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In ruling on a 12(b)(6) motion, I must accept as true all well-pleaded allegations of fact, and any reasonable inferences that may be drawn therefrom, in plaintiff's complaint and must determine whether "under any reasonable reading of the pleadings, the plaintiff[] may be entitled to relief."  Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996), citations omitted.  Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiffs' obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)."  Id., citations omitted.  A well-pleaded complaint may proceed even if it appears "that recovery is very remote and unlikely."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  When considering a Rule 12(b)(6) motion, I do not "inquire whether the plaintiff[] will ultimately prevail, only whether [he is] entitled to offer evidence to support [his] claims."  Nami, 82 F.3d at 65, citing Scheuer, 416 U.S. at 236.

4

Additionally, pleadings that are pro se must be held to "less stringent standards than formal pleadings drafted by lawyers." Dickerson v. Brooks, 2007 WL 4689001, at *2 (W.D. Pa.), citing Haines v. Kerner, 404 U.S. 519, 520-521 (1972); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969), noting that a petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance." Pro se complaints, especially from civil rights plaintiffs, should be read liberally, as prisoners in particular are often at an informational disadvantage that may prevent them from pleading the full factual predicate for their claims. Alston v. Parker, 363 F.3d 229, 233-34 & n.6 (3d Cir. 2004). Under our liberal pleading rules, a district court should construe all allegations in a pro se complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). Because this plaintiff is a pro se litigant, I will consider his allegations of fact and make inferences where it is necessary and appropriate.

DISCUSSION

Section 1983[3] provides an avenue for individuals to adjudicate violations of rights secured under federal constitutional or statutory law. Plaintiff argues that defendants violated

---

[3] Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

his rights under the Universal Declaration of Human Rights[4] and the Eighth Amendment when they denied and delayed treatment of the tumor in his lower back.  Defendants do not dispute that plaintiff exhausted his administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. §1997e(a).

Plaintiff claims the right to a standard of living adequate for his health and well-being. Article 25 (1), Universal Declaration of Human Rights.  As a prisoner, he claims that he should have access to the health services, medical care and treatment available without discrimination on the grounds of his status as a prisoner under the Basic Principles of for the Treatment of Prisoners, a resolution adopted by the United Nations General Assemble on December 14, 1990. He also claims that he is entitled to medical care and treatment whenever necessary, free of charge, and the right to request or petition a judicial or other authority for a second medical examination or opinion based on the Basic Principles.  However, neither the Declaration nor the Basic Principles are a treaty or international agreement and they do "not of [their] own force impose obligations as a matter of international law."  Stukes v. Knowles, 229 Fed. Appx. 151, 152 (3d. Cir. 2007), citing Sosa v. Alvarez-Machain, 542 U.S. 692, 734-35 (2004).  Thus, the Declaration and the Basic Principles cannot support plaintiff's claims.

Defendants argue that plaintiff's remaining claim against DOC and DGS based on the Eighth Amendment protection against cruel and unusual punishment must be dismissed for failure to state a claim because they are protected by sovereign immunity under the Eleventh

---

[4]  The Universal Declaration of Human Rights is a declaration adopted by the United Nations General Assembly on December 10, 1948 in Palais de Chaillot, Paris.  While not a treaty itself, the Declaration was explicitly adopted by the United Nations for the purpose of defining the meaning of the words "fundamental freedoms" and "human rights" appearing in the United Nations Charter which is binding on all member states, including the United States.

Amendment.  Defendants argue that plaintiff's Eighth Amendment claim against Rendell and

Knauer must be dismissed for failure to state a claim under the Eighth Amendment.  Defendants

further argue that plaintiff's Eighth Amendment claim against Knauer, PHS, Arias, Iacarrino and

Smith must be dismissed under the two-year statute of limitations for tort claims brought under §

1983.

I.      Eleventh Amendment Immunity

        Plaintiff claims that as state governmental agencies, DOC and DGS have a responsibility

to provide medical care to prisoners confined to DOC custody.  He alleges that DOC and DGS,

or its approved contracted medical providers CPS or PHS, delayed and denied this medical

treatment because of financial reasons, which has resulted in plaintiff's tumor becoming

inoperable.  Defendants argue that DOC, DGS and Knauer as a government official acting in her

official capacity are protected by sovereign immunity and that DOC and DGS are not persons

under Section 1983.[5]

        The Eleventh Amendment states that "[t]he Judicial power of the United States shall not

be construed to extend to any suit in law or equity, commenced or prosecuted against one of the

United States by citizens of another State or by Citizens or Subjects of any Foreign State."  U.S.

Const. amend. XI.  It forbids actions within the federal courts against states or their agencies and

state officials acting within their official capacities.  Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d

Cir. 1981).  Those actions are barred unless the state has consented to the filing of such a suit.

---

        [5] Defendants Prison Health Services, Arias, Iacarrino and Smith do not allege that the
Eleventh Amendment bars suit against them.  The Supreme Court held that:  "A physician who
is under contract with the State to provide medical services to inmates at a state-prison hospital
on a part-time basis acts 'under color of state law,' within the meaning of §1983 when he treats
an inmate."  West v. Atkins, 487 U.S. 42, 57 (1988).

Roach v. SCI Graterford Medical Dep't, 398 F. Supp.2d 379, 384 (E.D. Pa. 2005), citing

Edelman v. Jordan, 415 U.S. 651, 662 (1974).  The Commonwealth of Pennsylvania has not

waived its rights under the Eleventh Amendment.  42 Pa. C.S.A. § 8521(b), stating that

"[n]othing contained in this subchapter shall be construed to waive the immunity of the

Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the

Constitution of the United States."  DOC is an agency of the state.  Rauso v. Vaughn, 2000 WL

873285, at *5  (E.D. Pa. June 26, 2000), citing 71 Pa. Cons. Stat. Ann. § 61.  Additionally, as a

state agency, the Eleventh Amendment bars claims against DGS.  Ford v. Pennsylvania, 2008

WL 4132330, at * 4  (M.D. Pa. Sept. 2, 2008).  Therefore, all claims against DOC and DGS and

the claims against Knauer in her official capacity are barred by the Eleventh Amendment and

will be dismissed.

Additionally, states and state departments of corrections are not considered persons who

can be sued under 42 U.S.C. §1983.  Will v. Michigan Dept. Of State Police, 491 U.S. 58 (1989).

State departments of corrections are regarded as not having an existence apart from the state.

Lavia v. Penn Dept. of Corrections, 224 F.3d 190, 195 (3d Cir. 2000).  As they are not persons,

DOC and DGS cannot be sued under Section 1983.

II.      Failure to State a Claim under the Eighth Amendment

Defendants argue that plaintiff's Eighth Amendment claim against Rendell and Knauer

for failure to provide medical care and treatment to plaintiff for his injury and for the delay and

denial of medical care must be dismissed for failure to state a claim.  A valid claim under § 1983

must plead adequately three elements:  (1) defendants acted under color of law; (2) defendants

violated plaintiffs' federal constitutional or statutory rights and (3) that violation caused injury to

plaintiffs.  Elmore, 399 F.3d at 281.  Suits filed against an official in his or her personal capacity

seek to impose liability for actions taken under the color of law.  Hafer v Melo, 502 U.S. 21, 25 (3d Cir. 1991).  To show personal liability in a §1983 action, it is enough that plaintiff establishes that defendant caused the loss of the federal right while acting under the color of state law.  Id.  It is undisputed that defendants were acting under color of state law.  Once it has been established that defendant acted under color of state law, the court must identify the federal right defendant allegedly violated.

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832 (1994), citations and quotation marks omitted.  "The Cruel and Unusual Punishments Clause, and indeed the entire Eighth Amendment, is made applicable to the states through the Fourteenth Amendment."  Hubbard v. Taylor, 399 F.3d 150, 164 n.21 (3d Cir. 2005), citing Robinson v. California, 370 U.S. 660 (1962).  The Eighth Amendment requires that prison officials provide "humane conditions of confinement," including adequate food, clothing, shelter and medical care.  Farmer v. Brennan, 511 U.S. 825, 832 (1994), citations omitted.  The Supreme Court has held that the Eighth Amendment's prohibition against cruel and unusual punishment requires the provision of basic medical care. Reynolds v. Wagner, 128 F.3d 166, 173 (3d. Cir. 1997), citing Helling v. McKinney, 509 U.S. 25, 32 (1993) and Estelle v. Gamble, 429 U.S. 97, 103-04 (1976).

A two-pronged standard enunciated in Estelle requires deliberate indifference on the part of the prison officials and that the prisoner's medical needs be serious.  Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987), internal citations and quotation marks omitted.  The Court of Appeals has held that deliberate

9

indifference is demonstrated in circumstances including:  (1) where prison authorities deny

reasonable requests for medical treatment and such denial exposes the inmate to undue suffering

or the threat of tangible residual injury; (2) where knowledge of the need for medical care is

accompanied by an intentional refusal to provide that care or if necessary medical treatment is

delayed for non-medical reasons; (3) where prison officials enact arbitrary or burdensome

procedures to create interminable delays or denial of medical care to suffering inmates; (4)

where prison officials condition provision of needed medical services on an inmate's ability or

willingness to pay or (5) where prison authorities prevent an inmate from receiving

recommended treatment for serious medical needs or deny access to a physician capable of

evaluating the need for such treatment.  Lanzaro, 834 F.2d at 346-47, internal citations and

quotation marks omitted.  Additionally, officials may be liable under Section 1983 for the acts of

those over whom they have supervisory responsibility, but civil rights liability cannot be based

solely on the doctrine of respondeat superior; personal involvement in the alleged wrongdoing

must be shown.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

A serious medical need is defined as "one that has been diagnosed by a physician as

requiring treatment or one that is so obvious that a lay person would easily recognize the

necessity for a doctor's attention" or where the denial or delay of treatment results in

"unnecessary and wanton infliction of pain."  Id. at 347, internal citations omitted.  However, a

non-physician or non-medical prison officer cannot be held liable or considered deliberately

indifferent to serious medical needs simply because he failed to respond directly to the medical

complaints of a prisoner already being treated by the prison doctor.  Durmer v O'Carroll, 991

F.2d 64, 69 (3d Cir. 1993); see also Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004), holding

that "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."

A.    Governor Edward Rendell

Plaintiff alleges that Rendell, in his individual capacity as Governor of Pennsylvania, is responsible for overseeing all of the Pennsylvania state government agencies and it is in this capacity that plaintiff claims that Rendell failed to ensure that plaintiff received adequate medical care and treatment while in DOC custody.  However, plaintiff does not claim that Rendell personally caused the injury or personally denied treatment to plaintiff.  As liability cannot attach solely through the doctrine of respondeat superior, Rode, 845 F.2d at 1207, and Rendell cannot be considered deliberately indifferent by his failure to respond directly to the medical complaints of a prisoner being treated by the prison doctor, Durmer, 991 F.2d at 69, Rendell cannot be held individually responsible for plaintiff's injuries.  I will therefore dismiss all claims against Rendell in his individual capacity as governor..

B.    Julie Knauer, Corrections Health Care Administrator at SCI Graterford

Plaintiff alleges that Knauer, in her individual capacity as Health Care Administrator, refused to allow plaintiff needed phase 2 and phase 3 medical treatment for a spinal tumor during the time frame of February 2001 to June 2001 by personally disapproving the orders of Dr. Ayeesha Kamal at Temple University Hospital for financial reasons which permitted the tumor to become enlarged and the injury to become more severe.  Knauer has admitted for the purpose of this motion that a tumor such as the one that afflicts the plaintiff is a serious medical condition, satisfying the first prong of the Estelle test.  Although plaintiff does not deny that defendants have provided him with some medical treatment including x-rays, plaintiff alleges that he was denied treatment prescribed by doctors that may have reduced the tumor and that

11

denial or delay of the treatment for financial reasons caused plaintiff unnecessary infliction of pain which sufficiently states a claim under Lanzaro.  Lanzaro, 834 F.2d at 346-47.  Health care administrators do not prescribe medications or make decisions regarding the course of treatment prescribed to inmates.  As such, courts generally have found that prison health care administrators do not act with "deliberate indifference" when the prisoner plaintiff is receiving treatment from the prison doctor.  See, e.g. Hemingway v. Falor, 2006 WL 2786866, at *4 (3d Cir. Sept. 28, 2006); Miller v. Hoffman, 1999 WL 415397, at *11 (E.D. Pa.  June 22, 1999), collecting cases.  However, health care administrators are not immune from liability; where the facts indicate personal involvement in an inmate's allegedly deficient medical treatment, courts have refused to grant summary judgment in favor of the administrator.  Curry v. Thomas, 2008 WL 4155099, at *4 (W.D. Pa. Sept. 8, 2008), collecting cases.  Plaintiff has alleged that Knauer was personally involved in the decision to deny plaintiff treatment.  At this point in the proceedings, plaintiff has sufficiently alleged a delay and denial by defendant Knauer in his medical treatment to state an Eighth Amendment claim of  unnecessary and wanton infliction of pain.   I will therefore deny defendants' motion to dismiss the claim against Knauer for failure to state a claim under the Eighth Amendment.

      C.     Dr. Ralph Smith, Dr. Dennis Iaccarino, Dr. Felipe Arias and John Does

      Plaintiff alleges that Smith, Arias and Iaccarino were contracted physicians hired and paid by the DOC to provide in-house medical care and treatment to prisoners confined at SCI Graterford.  Plaintiff alleges that as medical personnel paid to provide him treatment they knew of plaintiff's tumor, and of the need for radiation and surgery to remove said tumor, but failed to provide this treatment for financial reasons.  Defendants argue that plaintiff fails to state a claim

against the doctors because the complaint does not allege that they knew that their conduct presented a substantial risk of harm to him and that they acted or failed to act in any way.

Plaintiff specifically pled that Smith personally disapproved plaintiff's previously ordered CT scans on September 19, 2001 for financial reasons and then disapproved his previously ordered MRI scans on December 6, 2001.  It would be obvious to a reasonable man that not performing prescribed treatments on a tumor near the spine would present a substantial risk of harm to the patient.  See Farmer, 511 U.S. at 842, holding that "if the risk is obvious, so that a reasonable man would realize it, we might well infer that [defendants] did in fact realize it".  As he has pled that Smith personally prevented him from receiving prescribed care for a serious medical need, he has properly pled a claim against Smith.

Plaintiff pled that Iaccarino and Arias failed to provide medical treatment for financial reasons despite knowledge of his medical condition and the pain it caused him but did not allege that they personally chose to deny or delay treatment, that they made decisions to deny or delay his treatment, or that they were in any way personally responsible for the delay or denial.  In fact, reading the complaint liberally, it appears from his complaint that plaintiff believes the decision to deny and delay his treatment came from Knauer, PHS and Smith specifically and that Iaccarino and Arias simply complied with the decision not to provide the treatment that doctors including Iaccarino ordered.  I will therefore grant the motion to dismiss the claims against Iaccarino and Arias but deny it for the claim against Smith.

D.   Prison Health Services

Plaintiff claims that PHS is a medical provider contracted and paid by the Commonwealth of Pennsylvania to provide medical treatment and services to plaintiff and other Pennsylvania state prisoners.  Plaintiff alleges that PHS was one of the medical providers

responsible for the delay and denial of adequate medical treatment for the tumor on plaintiff's spine which resulted in the plaintiff's tumor becoming inoperable and that PHS denied treatment after the 2007 surgery.  Defendants argue that plaintiff has failed to state a claim because he does not allege in his complaint that PHS had a policy or custom which caused a constitutional violation.

A private corporation like PHS may be held liable for § 1983 constitutional violations if, while acting under color of state law, the corporation knew of and acquiesced in the deprivation of a plaintiff's rights.  Miller v. City of Philadelphia, 1996 WL 683827, at *3-4 (E.D. Pa. Nov. 26, 1996), citing Monell v. New York City Dep't of Sec. Serv., 436 U.S. 658 (1978).  To establish liability of a private corporation, plaintiff must show that the corporation "with 'deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [plaintiff's] constitutional harm.' " Id. at *4, quoting Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989), cert. denied, 493 U.S. 1044 (1990). The Court of Appeals has held that "PHS [i.e., a private health care subcontractor for a jail] cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.  In order for PHS to be liable, [plaintiff] must provide evidence that there was a relevant PHS policy or custom, and that the policy caused the constitutional violation they allege."  Natale v. Camden County Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003), footnote and citations omitted.

Here, PHS claims that plaintiff has not sufficiently pled the existence of a practice or policy that PHS knew constituted a substantial risk of harm to him.  Though he does not allege a practice or policy per se, plaintiff is proceeding pro se and the Court of Appeals has held that pro se complaints, especially from civil rights plaintiffs, should be read liberally, and has noted that

14

prisoners in particular are often at an informational disadvantage that may prevent them from pleading the full factual predicate for their claims.  Alston, 363 F.3d at 233-34 & 233 n.6. Liberally reading the complaint through the lens of plaintiff's response to PHS' motion to dismiss, plaintiff is alleging a policy or custom on behalf of PHS.  He alleges that PHS was aware of the diagnoses and chose to delay or deny him care and that that PHS have "permanently maimed or handicapped" many prisoners due to the "delay or outright denial of prompt, proper and adequate medical treatment . . . for financial reasons" and that this policy caused him to experience pain for no penological purpose.  Policies that subject prisoners to pain that serves no penological purpose are unconstitutional.  See Estelle, 429 U.S. at 103.  By alleging that as part of PHS's cost-saving policy treatment was deliberately denied or delayed in violation of his Eighth Amendment right to be free from cruel and unusual punishment, plaintiff has sufficiently pled the existence of an allegedly unconstitutional policy carried out by an entity acting under color of state law.  I will therefore deny defendants' motion to dismiss the claim against PHS for failure to state a claim under the Eighth Amendment.

III.    Statute of Limitations

        The remaining defendants, Knauer, PHS and Smith, argue that plaintiff's claim for relief is barred by the Pennsylvania statute of limitations for § 1983 actions.[6]  Federal civil rights actions do not contain a specific statute of limitations for § 1983 actions so federal courts must look to the statute of limitations covering analogous state causes of action.  Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 457 (3d Cir. 1996).  In Pennsylvania, that cause of action is

---

        [6] Defendants argue that the claims against Arias and Iaccarino were barred by the statute of limitations, but as I will dismiss the counts against them for failure to state a claim I need not address that argument.

15

best characterized as a tort action for recovery of damages for personal injuries.  Wilson v.

Garcia, 471 U.S. 261, 266-67 (1985).  The limitations period for personal injury claims in

Pennsylvania is two years.  Derrickson v. Delaware County District Attorney's Office, 2006 WL

2135854, at *6 (E.D. Pa. July 26, 2006), citing 42 Pa. Const. Stat. §5524 (Supp. 1995).  The two-

year limitation period begins to run when the cause of action accrues.  Id., citing S.T. Hudson

Eng'rs. Inc. v. Camden Hotel Dev. Assocs., 747 A.2d 931, 934 (Pa. Super. Ct. 2000).  However,

the question of when a Section 1983 action accrues is determined by federal law.  Id., citing

Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991).  Under federal law, an action

accrues "when the plaintiff knew or should have known of the injury upon which its action is

based."  Id., citing Sameric Corp. of Del., Inc. v. City of Phila., 142 F.3d 582, 599 (3d Cir.

1998); Lake v. Arnold, 232 F.3d 360, 366 (3d Cir. 2000), holding that a cause of action accrues

when "the first significant event necessary to make the claim suable" occurs; Oshiver v. Levin,

Fishbein, Sedran & Berman, 38 F.3d 1380, 1386 (3d Cir. 1994), noting that "a claim accrues in a

federal cause of action as soon as a potential claimant either is aware, or should be aware, of the

existence of and source of an injury."

   Applying the rule, the first significant event occurred at some point during 1999-2000

when plaintiff was returned from Temple University Hospital after being examined for treatment

of a tumor in his spine.  Although he received steroids as phase one of a three-phase treatment

plan, after one week of treatment he alleges that defendants refused payment to Temple, so the

remaining phases of treatment were not administered and plaintiff was returned to SCI

Graterford.  Plaintiff "either was aware or should have been aware of the existence and source of

his injury" at the point he was returned to SCI Graterford without having all three of the

treatment phases accomplished.  Sameric, 142 F.3d at 599.  Plaintiff alleges that the first time he

16

was specifically denied treatment was March 2001 and defendants do not claim otherwise,  so

his alleged constitutional injury began accruing as of March 2001.[7]  His complaint was not filed

until January 22, 2008, well after the two-year limitations period.  Thus, absent any equitable

tolling, defendants are correct that plaintiff's claims relating to the denial and delay of medical

treatment prior to January 22, 2006, two years before his date of filing, would be time-barred.

However, plaintiff's claim constitutes a continuing violation of his civil rights.  The

Court of Appeals has recently described the continuing violations doctrine in the context of a §

1983 action as an equitable exception to a strict application of a statute of limitations where the

conduct complained of consists of a pattern that has only become cognizable as illegal over time.

Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001).  "[W]hen a defendant's conduct is part

of a continuing practice, an action is timely so long as the last act evidencing the continuing

practice falls within the limitations period; in such an instance, the court will grant relief for the

earlier related acts that would otherwise be time barred."  Brenner v. Local 514, United Board of

Carpenters, 927 F.2d 1283, 1295 (3d Cir. 1991).  However,

> [i]n order to benefit from the doctrine, a plaintiff must establish that the defendant's
> conduct is "more than the occurrence of isolated or sporadic acts."  Regarding this

---

[7]  Plaintiff claims that the statute of limitations should not begin to run until 2007 when he was informed by Dr. Walch after his surgery that his condition had become more serious and that defendants had denied further treatment for financial reasons.  Under Pennsylvania's discovery rule, which applies to § 1983 litigation, "even if a plaintiff suffers an injury, the statute of limitations does not begin to run until the plaintiff knows, or reasonably should know, (1) that he has been injured, and (2) that his injury has been caused by another party's conduct."  Mest v. Cabot Corp., 449 F.3d 502, 510 (3d Cir. 2006), quoting Debiec v. Cabot Corp., 352 F.3d 117, 129 (3d Cir. 2003).  Given that plaintiff filed a grievance on March 26, 2002, it is clear that he knew of his injury and that it had been caused by another party's conduct on that date and this is not a case where it would be difficult or impossible to discover the injury.  Plaintiff claims that he knew he had been diagnosed with a tumor, that the Temple physicians had prescribed treatment and that defendants denied it to him for financial reasons.  Thus, the discovery rule cannot equitably toll his claim filed on January 22, 2008.

inquiry, we have recognized that courts should consider at least three factors: (1) subject matter-whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency-whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. The consideration of "degree of permanence" is the most important of the factors.

Cowell, 263 F.3d at 292, citations omitted. Courts have applied the continuing violation reasoning to prisoners' civil rights litigation. See e.g., Foster v. Morris, 208 Fed. Appx. 174, 177-78 (3d Cir. 2006); Casilla v. New Jersey State Prison, 2008 WL 4003664, at *9 (D. N.J. Aug. 22, 2008).[8] The Seventh Circuit held in Heard v. Sheahan, 253 F.3d 316 (7th Cir. 2001) that:

defendants inflicted cruel and unusual punishment on the plaintiff by refusing to treat his condition. This refusal continued for as long as the defendants had the power to do something about his condition, which is to say until he left the jail. Every day that they prolonged his agony by not treating his painful condition marked a fresh infliction of punishment that caused the statute of limitations to start running anew. A series of wrongful acts creates a series of claims. Palmer v. Board of Education, 46 F.3d 682, 686 (7th Cir. 1995); Webb v. Indiana National Bank, 931 F.2d 434, 438 (7th Cir. 1991); Morton's Market, Inc. v. Gustafson's Dairy, Inc., 198 F.3d 823, 828 (11th Cir. 1999); Kuhnle Bros., Inc. v. County of Geauga, 103 F.3d 516, 522-23 (6th Cir. 1997).

Id. at 318.

Plaintiff's claim is one of an ongoing refusal to treat the tumor in his spine. He asserts that he is in pain every day and that he continuously filed grievances and complaints but defendants continuously denied or delayed his treatment. It is true that "when a single event gives rise to continuing injuries, the plaintiff can bring a single suit based on an estimation of his total injuries, and that mode of proceeding is much to be preferred to piecemeal litigation despite the possible loss in accuracy," id. at 319, citing Sandutch v. Muroski, 684 F.2d 252, 254 (3d Cir.

---

[8] But see Hunt v. Pa. Dept. of Corrections, 289 Fed. Appx. 507, 509 (3d Cir. 2008), stating that the Supreme Court and the Court of Appeals had never applied continuing violation reasoning outside of the employment discrimination context.

1982) (per curiam), but this preference does not apply to the case at hand.  Defendants denied

plaintiff several separate treatments and tests for his tumor and continued to deny and delay

treatment for years.  The last act, the denial of medical treatment following the surgery in

February 2007, occurs within the tolling period because defendants again denied treatment after

the second surgery in February 2007 and continue to do so.[9]

Applying the Cowell test, the facts alleged in this case support a continuing violation.  See

Cowell, 263 F.3d at 292.  The violations are of the same type of discrimination which is denying

and delaying plaintiff's treatment for the same tumor in his spine.  The only change alleged is that

due to the denial and delay plaintiff required more intensive treatment than before and that

defendants continued to deny or delay the required treatment.  The acts recurred with frequency

as evidenced by plaintiff's numerous grievances and alleged ongoing and repeated denial and

delay of several treatments for the tumor.  As to the degree of permanence, it is not the tumor's

permanence but the act's permanence that is at issue.  Defendants' act of denying and delaying

medical treatment does not have a degree of permanence though it was repeated with frequency.

Plaintiff's filing of grievances in an attempt to assert his right to medical treatment supports his

belief that the decision to deny or delay his medical treatment could change and that it was not a

permanent and final act.  Also, the consequences of the act would not have continued in the

absence of a continuing intent to deny or delay medical treatment.  While there is frequently an

element of uncertainty in medical treatment, it is likely that medical intervention at any time

---

[9]  It appears that if there was not a continuing violation plaintiff could proceed on the denial of the 2007 treatment plan even without the initial denial of treatment because he asserts that more intensive treatment was prescribed and independently delayed or denied allegedly for financial reasons and this action is not barred by the statute of limitations.  If plaintiff so chooses, I will permit him to amend his complaint to include this cause of action.

during the progression of events would have affected the consequences of his condition, even after the initial denial of treatment.  Indeed, plaintiff alleges that subsequent denials of treatment allowed the tumor to progress and become embedded in his spine, so the denials and delays actually worsened the condition.  I will therefore deny defendants' motions to dismiss plaintiff's claims on the ground that they are barred by the statute of limitations.

Additionally, even if this were not a continuous violation, plaintiff's claim would survive a motion to dismiss as the grievances may have equitably tolled the statute of limitations. Plaintiff claims that he filed grievances on March 26, 2002, August 27, 2002, February 28, 2003, February 10, 2004, August 23, 2004, March 6, 2006 and December 21, 2006 before filing suit on January 22, 2008 and that he filed informal complaints and requests slips complaining of his pain to all defendants which put them on notice.  Though the Court of Appeals has not yet ruled on the issue, this Court has several times held that the statute of limitations begins to run only when plaintiff has exhausted his administrative remedies under the PLRA.  Wright v. O'Hara, 2004 WL 1793018, at *6 (E.D. Pa. Aug.11, 2004); see also Cooper v. Beard, 2006 WL 3208783, at *8 (E.D. Pa. Nov. 2, 2006), recognizing that without this holding, "an inmate would be placed in a situation where his suit would either be barred from federal court for failure to exhaust administrative remedies under the PLRA, or time-barred because he had pursued those administrative remedies"; Houseknecht v. Doe, 2007 WL 1853962, at *2 (E.D. Pa. June 26, 2007).  In the present case, according to the complaint the first incidents giving rise to plaintiff's claim occurred during March 2001.  Plaintiff alleges that he filed numerous complaints and grievances during the intervening period from March 2002 through December 2006 before filing this suit.  A reasonable inference to draw from this allegation is that plaintiff was exhausting his administrative remedies pursuant to the PLRA and defendants do not contest that plaintiff

20

adequately exhausted his administrative remedies during this time.  In February 2007, he underwent surgery for the tumor.  He filed this claim in federal court January 22, 2008.  However, I cannot determine whether or for how long the statute of limitations on plaintiff's claim may have been tolled without discovery; accordingly even if plaintiff's claim were not a continuous violation, I would at this stage deny defendants' motions to dismiss without prejudice.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NOAH CARTER                                          :                    CIVIL ACTION
                                                     :
            v.                                       :
                                                     :
PENNSYLVANIA DEPARTMENT OF                           :                    No. 08-0279
CORRECTIONS, PENNSYLVANIA                            :
DEPARTMENT OF GENERAL SERVICES,                      :
PRISON HEALTH SERVICES, CORRECTIONAL                 :
PHYSICIANS SERVICES, GOV. EDWARD                     :
RENDELL, JULIE KNAUER, DR. RALPH                     :
SMITH, DR. DENNIS IACCARRINO,                        :
DR. FELIPE ARIAS and JOHN DOES                       :

ORDER

    AND NOW, this  17th   day of December 2008, upon consideration of defendants'

motions to dismiss and plaintiff's responses, it is ORDERED that:

1) defendants' motions to dismiss claims against the Pennsylvania Department of Corrections, the

Pennsylvania Department of General Services, Governor Edward Rendell, Dr. Felipe Arias and

Doctor Dennis Iaccarrino are GRANTED and judgment is entered against plaintiff and in favor of

defendants Pennsylvania Department of Corrections, the Pennsylvania Department of General

Services, Governor Edward Rendell, Dr. Felipe Arias and Doctor Dennis Iaccarrino with respect

to the sole count of plaintiff's complaint;

2) defendants' motions to dismiss claims against defendants Julie Knauer, Physicians Health

Services and Dr. Ralph Smith are DENIED; and

3) plaintiff may amend his complaint within thirty (30) business days from date of this Order.


                                          s/Thomas N. O'Neill, Jr.
                                         THOMAS N. O'NEILL, JR., J.