IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NOAH CARTER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DR. RALPH SMITH, et al. | : | NO. 08-279 |

O'NEILL, J.                                                                September 22, 2009

MEMORANDUM

On March 16, 2009, plaintiff Noah Carter filed an amended complaint against Donald T. Vaughn and David DiGuglielmo[1] alleging that they had violated his Eighth Amendment right to adequate medical treatment while incarcerated. Presently at issue is defendants' motion to dismiss.[2] I have before me the pleadings, defendants' motion to dismiss and plaintiff's memorandum in opposition thereof. For the following reasons, I will deny defendants' motion to dismiss.

BACKGROUND[3]

I.    PROCEDURAL HISTORY

Plaintiff Noah Carter is an inmate at the State Correctional Institution at Graterford (SCI Graterford). On January 22, 2008, plaintiff filed a pro se complaint against the Pennsylvania

---

[1] Plaintiff's amended complaint also includes claims against those defendants who were not dismissed in my December 17, 2008 Order. Because claims against those defendants are not presently at issue, references to "defendants" in this Memorandum refer solely to DiGuglielmo and Vaughn.

[2] Although defendants Vaughn and DiGuglielmo occupied the office of Superintendent at different times, neither party alleges any material distinction in their conduct. Further, independent review of the complaint reveals no such distinction. Therefore, both defendants are treated simultaneously here.

[3] I accept as true all well-pleaded facts in plaintiff's complaint together with reasonable inferences that may be drawn therefrom. Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996).

Department of Corrections (DOC), the Pennsylvania Department of General Services, Governor Edward Rendell, Prison Health Services (PHS), Julie Knauer, Dr. Ralph Smith, Dr. Dennis Iaccarino, Dr. Felipe Arias and John Does alleging that adequate medical treatment for his serious medical needs was denied and delayed.  On December 17, 2008, I dismissed plaintiff's claims against all defendants except PHS, Knauer and Dr. Smith.  I subsequently appointed counsel to represent plaintiff and granted him leave to amend his complaint.  On March 16, 2009, plaintiff timely[4] filed an amended complaint alleging that defendants Donald T. Vaughn and David DiGuglielmo deprived plaintiff of his Eighth Amendment right to adequate treatment of his serious medical needs.  On May 18, 2009, Vaughn and DiGuglielmo timely filed an answer and a motion to dismiss the amended complaint.

II.   FACTUAL HISTORY

Plaintiff is currently serving at SCI Graterford a sentence imposed by the Montgomery County Court of Common Pleas.  Defendant Vaughn served as Superintendent of SCI Graterford until 2003 when defendant DiGuglielmo replaced him.  PHS is an organization that has been hired by the DOC to provide medical care to inmates residing in institutions including SCI Graterford, SCI Fayette and SCI Smithfield.  PHS faced a budget deficit during the time plaintiff was allegedly receiving inadequate medical care.  To address its financial needs, PHS offered monetary incentives to employees who were successful in cutting the costs of prisoners' medical care.  Specifically, PHS discouraged the use of off-site treatment for inmates.

Beginning in 1999 during his incarceration at SCI Graterford, plaintiff began to

---

[4] The parties stipulated to a 45 day extension of time for the plaintiff to file his amended complaint.

experience severe lower back, spine and hip pain. After being unable to secure treatment for his condition from SCI Graterford medical staff, he filed an initial grievance with prison grievance officers. In 2001, Dr. Iaccarino, a physician employed by PHS, began treating plaintiff's back ailments. He ordered CT scans of plaintiff's head and neck to determine the extent of the injury but those CT scans were denied by Dr. Smith, another PHS physician at SCI Graterford. In early December 2001, plaintiff was sent by Dr. Iaccarino to Temple University Hospital for a neurological consultation. The Temple neurologist ordered an MRI of plaintiff's head and neck but that MRI was also denied by Dr. Smith. Plaintiff again submitted multiple grievances and was thereafter transferred back to Temple University Hospital where he was examined by neurologist Dr. Ayeesha Kamal. Dr. Kamal again ordered an MRI which plaintiff underwent about one month later. After reviewing the MRI films, Dr. Kamal prescribed a three-phase treatment plan to remove the tumor and to prevent, if possible, any serious damage to plaintiff's spine. In late March 2003, plaintiff received one week of phase one steroid treatment. Despite the fact that the phase one treatment was unsuccessful, plaintiff was not treated with radiation and surgery as prescribed in phases two and three because defendant PHS refused to pay for the additional treatment.

In October 2003, plaintiff was again examined by an outside physician–Dr. Allen Webber. Dr. Webber recommended in writing regular neurological examinations and MRIs. Several days later, plaintiff was examined by Dr. Arias at SCI Graterford. Dr. Arias reviewed Dr. Webber's report and noted the plaintiff was scheduled for an MRI in June 2005. Plaintiff did not undergo that MRI until April 17, 2006.

From 2004 through 2006, plaintiff continued to submit requests for appropriate medical

treatment. Those requests were denied by individuals other than the defendants at issue here. After his requests were denied, plaintiff submitted grievances to defendant DiGuglielmo among others. Those requests were "summarily denied without reasonable investigation." Am. Compl. ¶ 36.

The results of his April 17, 2006 MRI showed expansion of the tumor. Dr. Webber noted that the ailment was serious enough to warrant care at a University-based neurological group. Plaintiff was then examined by Dr. Carroll P. Osgood, a neurosurgeon with Allegheny Brain and Spine Surgeons. She recommended surgical removal of the tumor.

On December 13, 2006, plaintiff was transferred from SCI Graterford to SCI Fayette, located in western Pennsylvania. On February 6, 2007, he underwent surgery at the University of Pittsburgh Medical Center (UPMC) to remove the tumor. Dr. William C. Welch, plaintiff's surgeon, was only partially successful, however, because the tumor had expanded to the point that it had become embedded in his spine. Dr. Welch prescribed a course of treatment to include three weeks of in-house therapy at UPMC, radiation that was to begin six weeks later and follow-up surgery in six months. Despite Dr. Welch's recommendations that plaintiff be treated at UPMC, SCI Fayette staff informed plaintiff that he would receive treatment at the prison. According to plaintiff, this decision was made for financial reasons.

In April 2007, two months after the surgery, plaintiff had an initial meeting with a physical therapist at SCI Fayette. There, plaintiff was told that the physical therapist visited SCI Fayette once a month, and that plaintiff would begin his physical therapy in May 2007. Plaintiff received no physical therapy treatment before being transferred back to SCI Graterford in June 2007. His physical therapy at SCI Graterford began in October 2008, but he never received the

prescribed radiation treatment. In the meantime, Dr. Welch informed plaintiff that further surgery was impossible because the tumor had grown too large to remove without seriously risking paralysis.

Plaintiff has not yet received adequate medical care. He continues to suffer severe back pain as well as weakness and numbness in his extremities. He has filed numerous grievances and appeals with defendants DiGuglielmo and Vaughn among others, and those grievances and appeals have been and continue to be denied without adequate investigation and without consideration of plaintiff's serious medical needs.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a 12(b)(6) motion, I must accept as true all well-pleaded allegations of fact, and any reasonable inferences that may be drawn therefrom, in plaintiff's complaint and must determine whether "under any reasonable reading of the pleadings, the plaintiff[] may be entitled to relief." Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996), citations omitted. Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiffs' obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id., citations omitted. A well-pleaded complaint may proceed even if it appears "that recovery is very remote and unlikely." Scheuer v. Rhodes,

416 U.S. 232, 236 (1974). When considering a Rule 12(b)(6) motion, I do not "inquire whether the plaintiff[] will ultimately prevail, only whether [he is] entitled to offer evidence to support [his] claims." Nami, 82 F.3d at 65, citing Scheuer, 416 U.S. at 236.

## DISCUSSION

Section 1983[5] provides an avenue for individuals to adjudicate violations of rights secured under federal constitutional or statutory law. Plaintiff argues that defendants violated his rights under the Eighth Amendment when they denied and delayed treatment of the tumor in his lower back. Defendants do not dispute that plaintiff exhausted his administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. §1997e(a).

Defendants argue, however, that plaintiff's section 1983 claim against them must be dismissed for failure to state a claim. Fed. R. Civ. P. 12(b)(6). To state a valid claim under section 1983, "[a plaintiff] must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person

---

[5] Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or an omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.

acting under color of state law."[6]  Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995), quoting Moore v. Tartler, 986 F.2d 682, 685 (3d Cir. 1993).  Here, plaintiff alleges that his failure to receive treatment of the tumor in his lower back violated the Eighth Amendment's prohibition against cruel and unusual punishment.  It is well-settled that the Eighth Amendment requires prison officials to provide basic medical care to prisoners.  Estelle v. Gamble, 429 U.S. 97, 103-104 (1976).  In order to make out a violation of the Eighth Amendment, Estelle requires the plaintiff to show deliberate indifference on the part of the prison officials to the prisoner's serious medical needs.  Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987).  For the purposes of this motion, defendants concede that the plaintiff's medical needs were serious.  They argue, however, that the plaintiff has failed to allege with adequate specificity that defendants were deliberately indifferent to plaintiff's medical needs.

      The Court of Appeals has held that deliberate indifference is demonstrated in circumstances including:  (1) where prison authorities deny reasonable requests for medical treatment and such denial exposes the inmate to undue suffering or the threat of tangible residual injury; (2) where knowledge of the need for medical care is accompanied by an intentional refusal to provide that care or if necessary medical treatment is delayed for non-medical reasons; (3) where prison officials enact arbitrary or burdensome procedures to create interminable delays or denial of medical care to suffering inmates; (4) where prison officials condition provision of needed medical services on an inmate's ability or willingness to pay; or (5) where prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment.  Lanzaro, 834

---

[6] It is undisputed that defendants acted under the color of state law.

F.2d at 346-47, internal citations and quotation marks omitted.  Notably, liability under section 1983 cannot be premised solely on the doctrine of respondeat superior; some personal involvement in the alleged wrongdoing must be shown.  <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988).  "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity."  <u>Id.</u>  "A civil rights complaint is adequate where it states the conduct, time, place, and persons responsible."  <u>Evancho v. Fisher</u>, 423 F.3d 347, 353 (3d Cir. 2005).

Plaintiff's amended complaint contains the following allegations:

"During the [period from 2004 to 2006] Plaintiff submitted several grievances regarding his inability to obtain adequate medical treatment [and that those] grievances and resulting appeals were summarily denied by Defendant[] . . . DiGuglielmo without reasonable investigation."  Am. Compl. ¶ 36.

"Defendants . . . DiGuglielmo[] and Vaughn, continually denied and continue to deny Plaintiff's grievances and appeals without adequate investigation and without consideration of Plaintiff's serious medical needs."  Am. Compl. ¶ 56.

"Defendants . . . DiGuglielmo[] and Vaughn individually and/or collectively have imposed and continue to impose burdensome procedures that have resulted in unnecessary delays and baseless denials of Plaintiff's medical treatment."  Am. Compl. ¶ 64.

"The phase one steroid treatment was unsuccessful.  However, Plaintiff never received the other two phases of treatment at Temple University Hospital or at any other medical institution.  Upon information and belief, this was due to Defendant PHS's refusal to pay for treatment despite knowing that it was medically necessary."  Am. Comp. ¶ 30.

"Upon information and belief, at all times relevant hereto, Defendant PHS offered cost-savings incentive programs that were available to employees of PHS, including Defendants, during the events giving rise to this lawsuit, whereby employees of PHS received monetary incentives to cut costs of prisoners medical care.  Pursuant to this plan, PHS discouraged the use of off-site treatment for inmates."  Am. Compl. ¶ 57.

"As a result of the policies promulgated and effectuated by PHS, Plaintiff's medical treatment was, and continues to be, delayed and denied for non-medical reasons."  Am. Compl. ¶ 67.

These paragraphs sufficiently identify the unlawful conduct by defendants; namely, the summary denial of his grievances without adequate investigation and for an improper purpose.  Further, the complaint sets forth in detail the prisons in which plaintiff was housed and the time period in which both his requests for medical treatment and the resulting grievances were allegedly denied.[7]  A reasonable jury could find that defendants knew of plaintiff's need for

---

[7] Plaintiff does not include the specific dates on which his grievances were filed or subsequently denied, but that information is unnecessary at this stage.  Parties are expected to use the civil discovery process to fill in any informational gaps.  Alston v. Parker, 363 F.3d 229, 233 n.6 (3d Cir. 2004), noting that the case law even allows parties to name fictitious defendants as stand-ins until their actual identities can be ascertained.

adequate medical care and acquiesced in the denial of that care for financial reasons. A reasonable jury could also find that defendants enacted burdensome procedures that delayed plaintiffs's medical treatment.[8]  At the motion to dismiss stage, plaintiff need not be more specific in his allegations.

Defendants argue, however, that deliberate indifference cannot be imputed to them simply based on their denial of the plaintiff's grievances. They cite Rode and several unreported cases for the proposition that "grievances are insufficient to impute knowledge to a defendant." Although as a general matter the Court of Appeals has been reluctant to assign liability to prison officials based solely on the denial of prisoner grievances, defendants' interpretation of this case law is too categorical. First, Rode is factually distinguishable. There, the Court affirmed the dismissal of a state employee's claim of retaliatory harassment against Governor Thornburgh. Rode, 845 F.2d at 1197.  The plaintiff had argued that the Governor should be held liable in part because he had gained personal knowledge of the alleged harassment when the plaintiff had filed grievances with his office of administration. Id. at 1208. The Court of Appeals held that such allegations were insufficient to impute knowledge to the Governor. Id. "In a large state employing many thousands of employees, a contrary holding would submit the Governor to liability in any case in which an aggrieved employee merely transmitted a complaint to the Governor's office of administration or to the Lieutenant Governor's office." Id.

The present case is different. Plaintiff alleges not only that he filed grievances and appeals with prison officials but also that defendants themselves summarily denied those

---

[8] These suggestions are neither exhaustive nor exclusive.

grievances and appeals without adequate investigation. Unlike in Rode, where the plaintiff failed to allege--and indeed could not have alleged--that the Governor actually reviewed his grievance, here plaintiff has alleged that defendants personally reviewed each grievance, failed to conduct an adequate investigation and/or acquiesced in the unconstitutional treatment.

Similarly, defendants' citation of Brooks v. Beard, 167 Fed. Appx. 923 (3d Cir. 2006), and Smith v. O'Boyle, 251 Fed. Appx. 87 (3d Cir. 2007), is unavailing because the present case is factually distinct. Both cases involve scenarios where the plaintiff's grievances were filed after the allegedly inadequate treatment had been received. In Brooks, the Court of Appeals affirmed the dismissal of the plaintiff's claim against the Secretary of the Pennsylvania Department of Corrections alleging inadequate medical attention for a leg injury suffered while incarcerated. Brooks, 167 Fed. Appx. at 924-25. The defendant's only connection to the leg injury was his review of grievances filed by the plaintiff after the medical treatment had been completed. Id. at 925. Likewise, in Smith, the defendant filed the relevant grievance eight days after his allegedly inadequate treatment for kidney stones had been completed. Smith v. O'Boyle, No. 4:CV-06-1879, 2007 WL 1412244 at *1-*2 (M.D. Pa. May 10, 2007). In both cases, the court found that such later-filed grievances did not establish the defendant's involvement in the treatment itself, and therefore no deliberate indifference had been shown. Id.

This case is different. Unlike in Brooks and Smith, where the plaintiffs had filed grievances simply to complain about their already-received treatment, here plaintiff has filed numerous grievances in an attempt to receive the necessary treatment in the first place. "Where a grievance alleges an ongoing constitutional violation, a supervisory defendant who reviews it is personally involved in that violation because he is confronted with a situation he can remedy

11

directly." Harnett v. Barr, 538 F. Supp. 2d 511, 524-25 (N.D.N.Y. 2008). Plaintiff's allegation that defendants denied without adequate investigation grievances alleging ongoing constitutional violations is sufficient to defeat a motion to dismiss.[9]

In a slightly different approach to the issue, defendants argue that they are not required to second-guess the treatment decisions of medical personnel and therefore because plaintiff had been under the care of prison doctors defendants cannot be found to have been deliberately indifferent to plaintiff's medical needs. Indeed, Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004), provides some support for this argument. There, the Court of Appeals noted that "[i]f a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." Id. at 236. The Court went on to hold, however, that "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official [] will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). Spruill is distinguishable from the present case in one important respect: the plaintiff in Spruill had failed to allege that the defendants had any knowledge of the alleged inadequacies in the plaintiff's medical treatment. Id. at 236 n.12. Although the plaintiff had filed grievances, there was no allegation that they had ever been reviewed by the defendants. Accordingly, the plaintiff had made no showing of deliberate indifference on the part of the defendant prison official.

---

[9] Of course, the content of plaintiff's grievances will be necessary to determine the extent to which defendants had actual knowledge of plaintiff's inadequate medical care. That information will likely be obtained in discovery. At this stage, however, I must assume plaintiff's grievances were sufficient to make defendants aware of the inadequate medical treatment.

On the contrary, in the present case plaintiff has alleged that defendants had actually received his grievances and denied them without adequate investigation. Accepting these allegations as true, plaintiff has sufficiently alleged that defendant had actual knowledge of both the treatment his outside doctors had prescribed and the fact that PHS had denied his several requests for that treatment. The Court of Appeals has never held that prison officials with actual knowledge of inadequate medical treatment of inmates are automatically shielded from liability simply because the inmate was receiving treatment from medical personnel. Because plaintiff has sufficiently alleged that defendants were deliberately indifferent to plaintiff's constitutionally inadequate medical treatment, I will deny defendants' motion to dismiss.

An appropriate Order follows.